IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   vs.<br><br>ALLENDALE RADA BERNAL,<br>a/k/a ALLEN BERNAL,<br>a/k/a ALLEN RADA BERNAL,<br>a/k/a ALLEN R. BERNAL,<br>a/k/a ALLAN DALE RADA BERNAL,<br>a/k/a ALLANDALE RADA GUID-BERNAL,<br>a/k/a JAMES BERNAL,<br><br>        Defendant. | CRIMINAL CASE NO. 12-00074<br><br>**ORDER**<br>**RE: MOTION TO SUPPRESS EVIDENCE**[1] |

Defendant Allendale Rada Bernal moves this court for an order suppressing all evidence and "fruit" obtained as a result of the search and seizure that occurred during a traffic stop on July 15, 2010. *See* Mot., ECF No. 9. The Motion to Suppress came before this court for an evidentiary hearing on February 11, 2013. After hearing the testimony of witnesses and argument from counsel, the court took the motion under advisement. For the reasons discussed more fully herein, the court sets forth the basis for its decision in **DENYING** said motion.

I. **FACTS**

---

[1] The court notes that the items seized include a firearm, ammunition, and a black pouch that contained U.S. Currency, drug paraphernalia, and drugs.

1

The Prosecution called two witnesses, Guam Police Department Officers Troy Brian Santos Lizama and Brian Awa. The Defense called one witness, first cousin of Officer Lizama, Homeland Security Investigations Special Agent Blu H. Shiroma.

Officer Lizama was on patrol in a marked police vehicle in a residential area in Dededo on the evening of July 15, 2010. While on East San Antonio Street nearing an intersection on Salisbury Street, Officer Lizama first heard a loud noise, possibly from a defective muffler, and then observed a 1989 Toyota Hilux pickup truck with license plate number 7642FSO, on Salisbury Street, traveling at a high rate of speed. Officer Lizama further observed that as the vehicle reached the intersection between East San Antonio Street and Salisbury Street, the vehicle did not come to a complete stop but rather made what was referred to as a "California stop" (when a vehicle slows down but does not come to a full stop). Officer Lizama was unable to see the driver of the truck because the windows were darkly tinted and rolled up.

The officer testified that the vehicle was traveling at an estimated speed of over 50 mph. This estimate was based on Officer Lizama's 23 years of experience in law enforcement, as well as his previous training with laser speed-detecting instrument. The speed limit in the area was 15 mph.

Upon his observations, Officer Lizama immediately activated his lights and sirens to conduct a traffic stop. However, for approximately one or two seconds, Officer Lizama briefly lost sight of the vehicle as it passed through the intersection at a high speed and as Officer Lizama slowly and safely made a left turn onto Salisbury Street to follow the vehicle for a pullover. Once Officer Lizama regained sight of the vehicle, the vehicle stopped in front of a residence, 321 Salisbury Street, Dededo.[2] Officer Lizama pulled over behind the vehicle and called in his location for safety reasons. The traffic stop occurred at approximately 9:20 p.m.

---

[2] The address was later identified as Defendant's residence.

The driver exited his truck and walked towards Officer Lizama's police vehicle, holding a black pouch on his right hand. The officer immediately exited his vehicle and instructed the driver to return to his truck. According to the officer, at this time, the driver informed him that they were high school classmates. Officer Lizama testified that he does not recognize the driver. After repeated instructions, the driver eventually complied and returned to his truck. The driver was alone, and he did not have any passengers with him.

Thereafter, Officer Lizama informed him of the traffic violations as the reason for the traffic stop. The traffic violations were disobeying a stop sign, imprudent driving, and defective muffler. The driver was given a verbal warning. The court took judicial notice of Government Exhibits 2, 3, 4, and 5; all of which are sections of Title 16, Guam Code Annotated, governing speed limits, mufflers, requirement of an automobile insurance, and penalty for lack of automobile insurance.

Officer Lizama requested for his driver's license, vehicle registration, and proof of insurance. The driver appeared very nervous and informed the officer that he did not have any of the requested documents. Also, the driver informed the officer that the vehicle did not belong to him and that he picked it up from a friend in preparation for a drag race. As Officer Lizama used his flashlight to assist the driver in locating the requested documents while the driver was "fumbling through some papers," Officer Lizama noticed the black pouch that the driver was carrying earlier, next to the papers, in between the bucket seats of the truck. At this time, Officer Lizama also observed that there was no visible marking on the dash by the front windshield or on the driver's door for a Vehicle Identification Number ("VIN"). Consequently, Officer Lizama asked the driver to open the hood of the truck to check for the VIN, and the driver complied. No VIN was found.

3

Case 1:12-cr-00074  Document 24  Filed 03/11/13  Page 3 of 12

Officer Awa arrived shortly thereafter, in response to a radio call from Officer Lizama reporting that he had just conducted a traffic stop. When Officer Awa arrived at the scene, Officer Lizama briefed him. Officer Awa was made aware of the traffic violations, which were failure to stop at a stop sign, speeding, and a loud muffler. In addition, Officer Awa also learned that the driver was unable to provide proof of vehicle registration, insurance, and driver's license.

Officer Awa asked the driver if he had anything illegal on his person and the driver responded in the negative. For safety reasons, Officer Awa then conducted a pat-down search on the driver. Thereafter, the officer asked the driver for consent to search the vehicle for "illegal weapons or anything illegal." The driver consented but also indicated that the truck was not his. During the search of the truck, Officer Awa found a firearm with ammunition underneath the driver's seat. Consequently, the driver was handcuffed and secured in one of the police vehicles for transport. Unsure of where the black pouch went, Officer Awa continued with the search and found the pouch on the dashboard. The pouch contained U.S. Currency, drug paraphernalia, and drugs.

The driver was identified as Allendale Bernal, the Defendant in this case.

Both Officer Lizama and Officer Awa testified that the Defendant appeared very nervous. Additionally, Officer Awa testified that the Defendant provided inconsistent stories as to where he had come from that evening. First, the Defendant stated that he came from a shop because he was getting the vehicle fixed for drag racing. Later on, the Defendant changed his story and said he came from strolling. When the Defendant stated that the car was not his and that it was his friend's, he did not offer or provide the friend's name.

Having been a police officer assigned to the Dededo Precinct during his first year and also based on his 23 years of law enforcement experience, Officer Lizama testified that the

4

Dededo area is considered a moderate- to a high-crime area. Crimes in the area vary, but it includes crimes of illegal substances such as marijuana and methamphetamine. Officer Lizama also testified that the truck was distinctive in that "it looked like it was just put together" and that it was a low-rider. According to Officer Lizama, the last time he pulled over a vehicle fitting that similar description, a shotgun was found.

With fourteen (14) years of experience in law enforcement, Officer Awa testified that the Dededo area has the highest crime rate as most of the criminal activities occur in the north due to the its large population. Officer Awa also testified that the vehicle was distinctive in that it was a low-rider with a custom-made dashboard, made out of metal or stainless steel.

II. **DISCUSSION**

    **a. There was Probable Cause for the Traffic Stop.**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

Because the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons,'" an automobile stop must be reasonable. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."[3] *Id.* at 810. *See also Delaware v. Prouse*, 440 U.S. 648, 661(1979).

---

[3] The Ninth Circuit in *United States v. Lopez-Soto* examined whether reasonable suspicion or the higher standard of probable cause is required to support an investigatory traffic stop under the Fourth Amendment. The court found that reasonable suspicion is enough to support an investigative traffic stop, citing to *Berkemer v. McCarty*, 468 U.S.

5

The Defendant disputes the Prosecution's contention that he was speeding and had a defective or loud muffler. *See* Mot., ECF No. 9, at 3. Specifically, the Defendant asserts that there was no radar or tracking evidence or other objective measurement of the speed of the Defendant's vehicle. *See* Reply, ECF No. 19, at 1. Additionally, the Defendant also asserts that there was no objective measurement of the muffler sound or a mechanical report of a defective muffler. *Id.* at 2. The Defendant also points out the following: he was not cited for any traffic violations, and the police report did not indicate that the Defendant failed to stop at a stop sign and that there was a violation of imprudent driving.

The court finds the Defendant's arguments unpersuasive. First, the Defendant fails to provide any legal authority to support his assertion that specific evidence, such as radar or tracking device or a mechanical report, is required to prove that a traffic violation occurred. Second, in a suppression hearing, the court is free to consider all evidence presented before it, including testimony of police officers. *See United States v. Lee*, 541 F.2d 1145, 1146 (5th Cir. 1976). The decision to credit or discredit an officer's testimony is within the exclusive domain of the district court. *See United States v. Fouche*, 776 F.2d 1398, 1403 n.3 (9th Cir. 1985), *overruled on other grounds*, *California v. Hodari D.*, 499 U.S. 621 (1991). In this case, the court finds the officers' testimony credible.[4]

Based on the testimony presented during the evidentiary hearing, the court finds that there was probable cause for the traffic stop. Officer Lizama testified that he heard a loud noise, possibly from a defective muffler, and then saw the truck driven by the Defendant going over the

---

420, 439 (1984). *Lopez-Soto*, 205 F.3d 1101, 1104 (9th Cir. 2000). The court further explained that the holding in *Whren* "tell us only that probable cause is sufficient to support a traffic stop, not that it is necessary." *Id.*

[4] During the evidentiary hearing, the Defendant through his counsel questioned Officer Lizama's credibility, because Officer Lizama's first cousin is Special Agent Shiroma. Special Agent Shiroma's wife at the time had a relationship with the Defendant.

speed limit and failing to make a complete stop at a traffic stop. These are all traffic violations pursuant to Title 16 of the Guam Code Annotated. Although the Defendant was not cited, he was verbally warned of the traffic violations during the stop.

Next, the Defendant asserts that the traffic stop was pretextual. Specifically, the Defendant argues that the traffic stop occurred at the Defendant's residence when the Defendant had already parked in front of his house and exited the truck, thus making his identity known to Officer Lizama. *See* Mot., ECF No. 9 at 3; and Reply, ECF No. 19, at 1. At the hearing, the Defendant through his counsel attempts to establish that Special Agent Shiroma and Officer Lizama participated in getting the Defendant arrested because Special Agent Shiroma's wife at the time had a relationship with the Defendant.

The court need not address the issue of whether the stop was pretextual because it has long been established that "[s]ubjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional." *Whren*, 517 U.S. at 813. "The fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop." *United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir. 2000). Here, the court finds that the stop was due to traffic violations. Thus, regardless of what the subjective intent of the officer may have been, there was an objective justification for the traffic stop.

### b. The Defendant was Seized, but Seizure was Justified.

The Defendant argues that he was seized, citing to the *Orhorhaghe* factors[5] to prove that he was in fact seized. *See* Mot., ECF No. 9, at 4-5. The court need not consider these factors to determine whether the Defendant was seized because "[t]he law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver 'even though the purpose of the

---

[5] The *Orhorhaghe* factors are as follows: (1) the number of officers; (2) whether weapons were displayed; (3) whether the encounter occurred in a public or non-public setting; 4) whether the officer's tone was or manner was authoritative, so as to imply that compliance would be compelled; and (5) whether the officers informed the person of his right to terminate the encounter. *Orhorhaghe v. INS*, 38 F.3d 488, 494-96 (9th Cir. 1994).

7

stop is limited and the resulting detention quite brief.'" *Brendlin v. California*, 551 U.S. 249, 255 (2007). *See also Whren*, 517 U.S. at 809-10 (temporary detention of individuals during a traffic stop "even if only for a brief period and for a limited purpose" constitutes a seizure). *See also Prouse*, 440 U.S. at 653. Thus, in this instant case, the Defendant was seized when he was pulled over by Officer Lizama.

The only question that remains is whether or not the seizure was justified. As discussed *supra*, there was probable cause to stop the vehicle. Accordingly, the seizure of the Defendant was justified. *See Whren*, 517 U.S. at 809-10; *see also Arizona v. Johnson*, 555 U.S. 323, 327 (2009) (the investigatory-stop standard is met in the traffic-stop setting "whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation.").

Next, the Defendant argues that even if he committed said traffic violations, the officers did not end the encounter by citing him but rather, they continued to seize him. *See* ECF No. 9, at 5.

"[A] detention beyond the duration of the initial traffic stop must be supported independently by reasonable suspicion of criminality." *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012) (citations omitted). Thus, "*possible criminality* is key to any . . . prolonged detention." *Id.* (emphasis added). *See also United States v. Rodgers*, 656 F.3d 1023, 1027 (9th Cir. 2011) (extending a traffic stop for additional investigation was permissible where "the situation was evolving, and new particularized factors arose that supported the continued detention."). Reasonable suspicion exists when there is "a particularized and objective basis" for suspecting the person stopped of criminal activity. *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (citations omitted).

In this instant case, the court finds that the Defendant was not detained for an unreasonable period of time. When the Defendant was stopped for traffic violations, the

8

circumstances were developing such that the officers deemed it necessary to investigate further. First, the traffic stop occurred at a high-crime area. Second, appearing very nervous, the Defendant was not able to provide his driver's license, proof of vehicle registration, and proof of insurance. Third, a red flag was raised when the vehicle was missing a VIN. Additionally, the vehicle was not a standard truck; it was distinctive in that it was a low-rider with a custom-made dashboard. Officer Lizama testified that "it looked like it was just put together," and that the last time he stopped a vehicle fitting that similar description, a shotgun was confiscated. And fourth, the Defendant continued to raise suspicion when he provided conflicting stories as to where he had come from that evening. *See, e.g., United States v. Torres-Sanchez*, 83 F.3d 1123, 1128 (9th Cir. 1996) (holding that continued detention was justified where the defendants' answers failed to dispel suspicions of illegal activity). Given these circumstances, there is more than just reasonable suspicion of criminality and thus, this court finds the extended traffic stop permissible.

      **c. There was Probable Cause to Search the Vehicle and Containers within it.**

The Defendant argues that warrantless searches of cars must be supported by probable cause, citing to *Carroll v. United States*, 267 U.S. 132, 149-56 (1925). *See* Mot., ECF No. 9 at 5. The Defendant argues that because he was stopped for traffic-related violations, there was no probable cause to reasonably believe that the truck contained contraband. *Id.*

"The Fourth Amendment proscribes unreasonable searches. As a general rule, searches conducted without a warrant and probable cause are presumptively unreasonable, subject to a number of 'specifically established and well-delineated exceptions.'" *United States v. Rambo*, 74 F.3d 948, 953 (9th Cir. 1996), citing to *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is a warrantless search of an automobile and the containers within it, provided that an officer has probable cause to believe that he will discover contraband or evidence of a

9

crime. *Rambo*, 74 F.3d at 953, citing to *California v. Acevedo*, 500 U.S. 565 (1991), and *United States v. Ross*, 456 U.S. 798, 825 (1982). *See also United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010).

Reviewing an officer's probable cause determination requires consideration of the total circumstances known to the officer at the time of the search. *See United States v. Brooks*, 367 F.3d 1128, 1134 (9th Cir. 2004). Probable cause to search exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas*, 517 U.S. at 696 (citations omitted). Probable cause does not require a certainty but rather, only a fair probability or a substantial chance that criminal activity took place or is taking place. *Brooks*, 367 F.3d at 1134.

Prior to the search, there was no Vehicle Identification Number (VIN) that could be found in the truck, despite efforts made by Officer Lizama to locate such. Further, prior to the search, the Defendant was not able to produce his own driver's license. The Defendant was also not able to produce proof of vehicle registration and insurance. Additionally, he appeared very nervous. Although he informed the officers that the truck was not his and that he took it from a friend to prepare it for drag racing, it was unknown to the officers at the time of the traffic stop whether the Defendant was truthful, because his story of where he had come from that evening was changing and inconsistent.

Given these known facts to the officers at the time of the stop and given the totality of the circumstances (including Dededo as a high-crime area), there was probable cause for the officers to believe that they will find evidence of a crime by searching the vehicle. Both Officers Awa and Lizama—having a total of approximately thirty-seven years of combined law enforcement experience—suspected that a crime had occurred (stolen vehicle). After the Defendant was stopped for traffic violations, he could not produce any indicia of his right to operate and possess

10

the truck. Accordingly, there was a fair probability or a substantial chance that the officers will find evidence of a stolen vehicle by searching the suspected stolen vehicle itself.

The court finds that there was probable cause to search the vehicle. And because there was probable cause to search the vehicle, there was also probable cause to search the black pouch found in the truck. *See Ross*, 456 U.S. 798, 825 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

The Defendant next argues that he did not consent to have the officers search the vehicle and that even if he did, he lacked the authority to consent because the vehicle did not belong to him. The court need not address these arguments because as discussed *supra*, there was probable cause to search the vehicle. A warrantless search of an automobile is justified provided there is probable cause. *See Rambo*, 74 F.3d at 953. Therefore, consent of the Defendant in this case was not required.

III. **CONCLUSION**

Based on the discussion above, the court hereby **DENIES** the Defendant's Motion to Suppress Evidence. The evidence includes a firearm, ammunition, and a black pouch that contained U.S. Currency, drug paraphernalia, and drugs.

The following trial schedule is hereby issued:

- The following must be filed or lodged with the court by ………. March 26, 2013
    - **An original and one copy of the witness list.** Witness lists must include legal names, aliases, nicknames, village/city of residence, and place of employment.
    - **Proposed *Voir Dire* Questions, Proposed Jury Instructions with source noted, and Proposed Verdict Forms.**
    - **An original and three copies of the exhibit list.** Government's exhibits shall be numbered and Defendants' exhibits shall be lettered.
    - **Three complete sets of marked and tabbed exhibits in three-ring binders, with each binder containing a filed copy of the exhibit list.** The exhibits shall include those items which may be introduced for

11

identification into evidence but not necessarily proffered for admission, i.e., police/investigative reports or witness statements. The parties shall <u>meet and confer</u> sufficiently in advance of trial and formulate a set of <u>joint exhibits</u>. Those exhibits upon which agreement cannot be reached shall be submitted separately by each respective party.

- **Final Pretrial Conference** shall be held on…….…..…April 2, 2013 at 11:00 a.m.

- **Jury Selection and Trial** shall be held on……............April 9, 2013 at 9:30 a.m.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
Chief Judge
Dated: Mar 11, 2013